UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JOSEPH SIENKANIEC, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., and RASIER, LLC, <br><br> Defendants. | Court File No. <br><br><br> **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Joseph Sienkaniec, on behalf of himself and all others similarly situated, (hereinafter collectively referred to as "Uber Drivers") brings this class action against Uber Technologies, Inc., and Rasier, LLC (hereinafter collectively referred to as "Uber"). Plaintiff bases the following allegations upon personal knowledge as to his own conduct, and made upon information and belief as to the acts or omissions of others.

## <u>INTRODUCTION</u>

1.      On behalf of himself and all current or former Uber Drivers in the State of Minnesota, Plaintiff brings this class action asking the Court to properly classify said Uber Drivers as employees of Uber (as opposed to independent contractors), and to award them unpaid wages, unreimbursed expenses they incurred while working in the course and scope of their employment with Uber, and gratuities they earned, but that were retained by Uber.

2.      Plaintiff brings his claims under the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.21 *et seq.*; Minnesota statutes governing the classification

of employees, Minn. Stat. § 181.722; the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44; and the common law.

3.    Uber is a transportation provider engaged in interstate commerce. Uber Drivers can be hailed and dispatched only through use of Uber's mobile application, which governs the performance of their driving duties for Uber.

4.    Plaintiff and the Class members are Uber Drivers who provide on-demand transportation services for Uber.

5.    Uber exercises complete dominion and control over its drivers in the performance of their duties, but nevertheless classifies – or, more accurately, misclassifies – Uber Drivers, including Plaintiff and the Class members, as independent contractors.

6.    As a result of its intentional and unlawful misclassification, Uber is enriched while Uber Drivers are deprived of the benefits and basic legal protections afforded by employment status; for example, minimum wages, overtime pay, workers' compensation benefits, unemployment insurance, income tax withholding, the ability to participate in Uber's retirement plan(s), meal and rest breaks, etc.

7.    Also as a result of Uber's intentional and unlawful misclassification, Uber Drivers are forced to incur expenses they would not have borne, or that would have been reimbursed, had Uber properly classified them as employees; for example, Uber Drivers pay for fuel, insurance, vehicle maintenance and cleaning, mobile phone and data usage, passenger amenities (e.g., mints, gum, water), and all other work-related expenses.

8.      Additionally, while Uber has represented to Uber Drivers and the public at large that gratuities are included in the cost of a fare, Uber does not remit such gratuities to its Uber Drivers.

9.      By this action, Plaintiff seeks equitable relief, compensatory and liquidated damages, attorneys' fees, taxable costs of court, and interest as permitted by law for Uber's misclassification of Plaintiff and the Class members as independent contractors, and its corresponding: (a) failure to pay wages for hours worked as required by law; (b) failure to reimburse Plaintiff and the Class members for expenses they incurred in carrying out their duties as Uber employees; and (c) conversion, theft, or loss of gratuities earned by and belonging to Plaintiff and the Class members.

## PARTIES

10.     At all times material herein, Plaintiff Joseph Sienkaniec was and is a resident of Scott County, Minnesota. Plaintiff began working as an Uber Driver in or around October 2015.

11.     At all times material herein, Defendant Uber was and is a corporation organized and existing under the laws of the State of Delaware, with its headquarters located at 1455 Market Street, San Francisco, California.

12.     Defendant Uber provides transportation services in interstate commerce, and it conducts business in and through the State of Minnesota.

13.     Defendant Rasier is a limited liability company organized and existing under the laws of the State of Delaware with its headquarters located at 1455 Market Street, San Francisco, California. Defendant Raiser conducts business in and through the State of

Minnesota. Upon information and belief, Defendant Raiser is a wholly owned subsidiary of, and is operated and controlled by, Defendant Uber.

14.     Upon information and belief, at all times relevant to this litigation, each Defendant acted as the agent of the other, and the acts or omissions of each Defendant are therefore legally attributable to the other. As such, Defendants Uber and Raiser are indistinguishable for purposes of this litigation, and they will be referred to collectively as Uber herein.

15.     At all times material herein, Uber was an "employer" within the meaning of the MFLSA; specifically, Minn. Stat. § 177.23, subd. 6.

16.     At all times material herein, Uber's "gross volume of sales made or business done [was] not less than $500,000," and thus, Uber is a "large employer" within the meaning of the MFLSA; specifically, Minn. Stat. § 177.24, subd. 1(a)(1).

17.     At all times material herein, Plaintiff was an "employee" within the meaning of the MFLSA; specifically, Minn. Stat. § 177.23, subd. 7.

18.     Uber is Plaintiff's "employer" within the meaning of the MFLSA; specifically, Minn. Stat. § 177.23, subd. 6.

## JURISCITION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because: (a) there are more than 100 Class members; (b) at least one Class member is a citizen of a State different from Defendants; and (c) the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

20.     This Court has personal jurisdiction over Defendants because they have purposely availed themselves of the rights and privileges of conducting business in the State of Minnesota, because they have continuous and systematic contacts with the State of Minnesota, and because the injuries giving rise to the claims set forth herein occurred in the State of Minnesota.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to the claim" occurred in this District.

## FACTUAL ALLEGATIONS

22.     Uber is an on-demand mobile taxi service, having developed and marketed a mobile application that allows customers with smart phones to submit a ride request, which is then routed to Uber Drivers in the rider's geographical area.

23.     Through its mobile application, Uber provides transportation services in the Minneapolis-St. Paul area and in more than 530 other cities across United States and around the world.[1]

24.     Uber touts itself as "the smartest way to get around," proclaiming "One tap and a car comes directly to you. Your driver knows exactly where to go."[2]

25.     Becoming an Uber Driver is a two-step process: first, the driver must "Sign up online" by furnishing information about himself and his vehicle.[3] Second the driver must share "license, registration, proof of insurance, and the necessary information to start

---

[1] Uber, https://www.uber.com/our-story/
[2] Uber, https://www.uber.com/?exp=home_signup_form
[3] https://www.uber.com/drive/

a driver screening."[4] Once approved, the driver can download the mobile application and start driving, whereupon Uber will purportedly "provide everything [they] need to be a success on the road."[5]

26.     According to a 2014 Uber Newsroom article,[6] Uber recruits new drivers at a rate of 20,000 per month worldwide, and it asserts that drivers in some large metropolitan areas (e.g., in New York City and San Francisco) earn over $70,000 annually.[7]

27.     Uber's business model has proven to be lucrative. Indeed, Uber reported gross revenues of almost $20 billion in 2015,[8] and it was valued by investors at more than $62 billion in 2016.[9]

28.     Much of Uber's profitability is attributable to the fact that, as set forth herein, it unlawfully misclassifies Uber Drivers as independent contractors, thereby avoiding certain tax obligations, dodging recordkeeping requirements, evading responsibility for providing benefits that inure to employees, and side-stepping minimum wage and overtime mandates.[10]

---

[4] https://www.uber.com/drive/

[5] https://www.uber.com/drive/

[6]     https://newsroom.uber.com/an-uber-impact-20000-jobs-created-on-the-uber-platform-every-month-2/

[7]     https://newsroom.uber.com/an-uber-impact-20000-jobs-created-on-the-uber-platform-every-month-2/

[8] http://www.businessinsider.com/uber-revenue-projection-in-2015-2014-11

[9]  http://www.nytimes.com/2016/08/26/technology/how-uber-lost-more-than-1-billion-in-the-first-half-of-2016.html

[10] http://smallbusiness.chron.com/costs-employee-vs-independent-contractor-1077.html

29.     Uber further enriches itself at the expense of its drivers, including Plaintiff and the Class members, by representing to them, and to the public at large, that gratuities are included in the fares paid by passengers, and then keeping those gratuities for itself.

30.     In approximately October 2015, Plaintiff began working as an Uber Driver.

31.     Unfortunately, Uber deceived and misled Plaintiff and the Class members from the very beginning by assuring them "it is easy to earn $2,000 a week driving for uber."



32.     Plaintiff, however, did not earn $2,000 per week. In fact, despite frequently working well in excess of 40 hours per week, he earned less than Minnesota minimum wage, which is currently set at $9.50 per hour.[11]

33.     In addition to deceiving Uber Drivers as to the level of earnings they could expect, Uber also misclassified them as independent contractors. It did so despite exercising dominion and control over all material aspects of its drivers' work-related activities, including their wages, working conditions, and job performance. For example, Uber:

a)     requires Uber Drivers to complete an application process;

b)     requires Uber Drivers to abide by Uber's rules, regulations, and policies;

c)     requires Uber Drivers to submit to background checks that include the disclosure of personal and financial information;

d)     requires Uber Drivers to register their vehicles with Uber;

e)     sets standards that Uber Drivers' vehicles must meet before being approved for use, and standards to which they must be maintained for continued use;

f)     unilaterally sets fare prices;

g)     unilaterally requires Uber Drivers to accept all discount promotion offers to customers;

h)     directs Uber Drivers to provide amenities (gum, mints, water, etc.) for riders;

i)     pays Uber Drivers directly from fares it collects from Uber riders;;

---

[11] *See* Minn. Stat. § 177.24, Subd. 1(b)(1)(iii).

j)      makes direct deposits into Uber Drivers' accounts;

k)      monitors Uber Drivers' hours on-line and number of trips;

l)      retains the right to control the manner and means by which Uber Drivers accomplish their work;

m)      retains the power to discipline or terminate Uber Drivers at its sole discretion by monitoring their ratings and suspending their access to the mobile application if those ratings fall to a level Uber considers to be unacceptable, thereby precluding the drivers from accepting fares; and

n)      prohibits Uber Drivers from booking rides outside the Uber application.

34.     Uber compensated Plaintiff on an approximately weekly basis, generally taking 20% of the total fares while Plaintiff retains the remaining 80%.

35.     When Plaintiff began driving for Uber, he typically worked 50 to 60 hours per week, which time was split between waiting for fares and driving.

36.     Despite devoting such a significant amount of time to his job, Plaintiff typically earned between $250 and $350 per week, far less than the $2,000 per week Uber represented he would make.

37.     Because Uber improperly classified Plaintiff as an independent contractor, he was required to pay all employment-related expenses, including but not limited to: fuel, vehicle repair, maintenance and cleaning, phone and data usage, insurance, and passenger amenities. Plaintiff typically incurs approximately $100-$150 in such unreimbursed business-related expenses per week.[12]

---

[12] Tellingly, Uber has saved nearly three-quarters of a billion dollars since 2009 by refusing to reimburse on-the-job expenses incurred by drivers in California and Massachusetts

38.     Assuming that Plaintiff works an average of 55 hours per week, and further assuming he incurs $100 per week in work-related expenses, he receives an effective hourly wage averaging between $2.72 and $4.54 as an Uber Driver.

39.     The foregoing hourly rate constitutes Plaintiff's only compensation because, as noted above, Uber represents to its drivers and the public at large that gratuities are included in the fares, and it instructed Plaintiff not to solicit or accept additional tips. At the time Plaintiff began driving for Uber, its website proclaimed as follows:

CASHLESS & CONVENIENT

You don't need cash when you ride with Uber. Once you arrive at your destination, your fare is automatically charged to your credit card on file – no need to tip.[13]

40.     And on its Minneapolis-St. Paul webpage, Uber reiterated there is "No need to tip."[14]

41.     Because tipping is standard in the transportation industry, Uber's foregoing assurances that "there's no need to tip," implies to Uber Drivers and riders alike that a gratuity is included in the fare, thereby depriving Uber Drivers of gratuities they would have received absent Uber's deception.

## CLASS ACTION ALLEGATIONS

42.     This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of a class defined as follows:

---

alone. *See* http://qz.com/680503/uber-saved-730-million-by-hiring-drivers-in-two-states-as-contractors-instead-of-employees/

[13] https://web.archive.org/web/20151015172706/https://www.uber.com/

[14] https://www.uber.com/cities/minneapolis/

All individuals who drive or have driven for Uber in the State of Minnesota and who were classified by Uber as independent contractors within three years of the filing of this Complaint through the date of final judgment in this action (the "Class Period").

43.     Subject to additional information obtained through further investigation and discovery, the foregoing Class definition may be expanded or narrowed by amendment or by amended complaint.

44.     Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors; government entities or agencies; any judicial officer presiding over this matter and members of their immediate families and judicial staff; and class counsel.

45.     **Numerosity:** The Class is so numerous that individual joinder is impracticable and the disposition of the claims as a class will benefit the parties and the Court. The actual number of Class members is unknown at this time, but upon information and belief, there have been, and are, thousands of Uber drivers in the State of Minnesota.

46.     **Commonality:** Numerous questions of law and fact common to Plaintiff and the Class exist and predominate over any questions that may affect individual Class members, including, without limitation:

    a)     Uber's policies, programs, practices, procedures, and protocols concerning or relating to the job duties of the Class members;

    b)     Whether Uber misclassified the Class members as independent contractors;

    c)     Whether Uber is subject to minimum and overtime wage requirements;

d)      Whether Uber's policy and practice of classifying the Class members as exempt from minimum and overtime wage requirements violates applicable provisions of state law;

e)      Whether a gratuity is included in the total fare for the Class members' services;

f)      Whether Uber is required to distribute the total proceeds of any gratuities to the Class members;

g)      Whether the Class members have suffered damages as a result of Uber's representation to customers that there is no need to tip Uber drivers;

h)      Whether the Class members have been required to pay the expenses of their employment with Uber;

i)      Whether Uber is required to compensate the Class members for the expenses of their employment;

j)      The proper measure of restitution recoverable by the Class members; and

k)      Additional common questions of law and fact as developed during the discovery phase of this litigation.

47.     **Typicality:** Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class members, was improperly classified as an independent contractor and had his tips diverted by Uber. The financial harms suffered by Plaintiff are similar to those suffered by Class members in that Plaintiff and all Class members have suffered damages in the form of unpaid compensation, gratuities, benefits, and in the deprivation of other rights and benefits that inure to employees.

48.     **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained experienced counsel with the necessary expertise and resources to prosecute a nationwide class action. Plaintiff and his counsel do

not foresee any circumstances where the interests of Plaintiff would be adverse to the interests of the Class.

49.     **<u>Superiority:</u>** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. It would be economically impractical for Plaintiff and Class members to pursue individual actions against Uber, as the costs of prosecution would likely surpass their individual damages. Thus, Plaintiff and Class members would be left with no effective remedy for the damages they suffered and continue to suffer. Class treatment of Plaintiff's claims will permit Plaintiff and the Class to vindicate their rights against Uber and conserve the resources of the Court and the Parties.  Class treatment will also avoid the possibility of inconsistent outcomes that could result from a multitude of individual actions in varying jurisdictions nationwide.

50.     The Class members are also readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are known to Uber and thus their number and identity is determinable from Uber's own records.

**<u>FIRST CAUSE OF ACTION</u>**
**Misrepresentation of Employment Relationship – Minn. Stat. § 181.722**

51.     Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

52.     Pursuant to Minn. Stat. § 181.722, subd. 1, "[n]o employer shall misrepresent the nature of its employment relationship with its employees to any federal, state, or local government unit; to other employers; or to its employees."

53.     For purposes of Minn. Stat. § 181.722, subd. 1, "[a]n employer misrepresents the nature of its employment relationship with its employees if it makes any statement regarding the nature of the relationship that the employer knows or has reason to know is untrue and if it fails to report individuals as employees when legally required to do so."

54.     Pursuant to Minn. Stat. § 181.722, subd. 2, "[n]o employer shall require or request any employee to enter into any agreement, or sign any document, that results in misclassification of the employee as an independent contractor or otherwise does not accurately reflect the employment relationship with the employer."

55.     During the applicable Class Period, Plaintiff and the Class members performed work for remuneration paid by Uber, and said work was carried out subject to its direction and control. Despite the foregoing, Uber knowingly, intentionally, and willfully misrepresented the nature of its employment relationship with Plaintiff and the Class members, and also required or requested that Plaintiff and the Class members enter into agreements or sign documents that misclassified them as independent contractors or otherwise failed to accurately reflect their employment relationship with Defendants.

56.     By failing to properly identify and classify Plaintiff and the Class members as employees, and by asking or requiring them to enter into agreements inaccurately classifying them as independent contractors and/or otherwise failing to accurately reflect their employment relationship, Uber violated Minn. Stat. §§ 181.722, subds. 1 and 2.

57.     As a proximate result of Uber's violations of Minn. Stat. § 181.722, Plaintiff and the Class members have suffered damages as set forth herein.

**SECOND CAUSE OF ACTION**
**Violations of MFLSA (Minn. Stat. § 177.21 *et seq*.)**
**Failure to Pay Minimum Wages – Minn. Stat. § 177.24, subd. 1(b)(1)**

58.     Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

59.     Uber is an "individual, partnership, association, corporation, business trust, or any person or groups of persons acting directly or indirectly in the interest of an employer in relation to an employee," and thus is an "employer" within the meaning of the MFLSA; specifically Minn. Stat. § 177.23, subd. 6.

60.     Plaintiff is an "individual employed by an employer," and thus is an "employee" within the meaning of the MFLSA; specifically Minn. Stat. § 177.23, subd. 7.

61.     Pursuant to the MFLSA – specifically Minn. Stat. § 177.24, subd. 1(b)(1)(iv) – every "large employer" in the State of Minnesota "must pay each employee wages at the rate of at least $9.50 per hour beginning August 1, 2016."

62.     As "an enterprise whose annual gross volume of sales made or business done is not less than $500,000," Uber is a "large employer" within the meaning of the MFLSA; specifically Minn. Stat. § 177.24, subd. 1(a)(1).

63.     As set forth in the preceding paragraphs, during the applicable Class Period, Uber knowingly, intentionally, and willfully: (a) misclassified Plaintiff and the Class members as independent contractors; (b) failed to keep accurate time records of the work performed by Plaintiff and the Class members; (c) failed to reimburse, or required Plaintiff and the Class members to "kick back," business expenses they incurred at Uber's insistence or for its benefit, thereby reducing their wages below the Minnesota minimum wage; and

(d) otherwise withheld compensation properly due and owing to Plaintiff and the Class members.

64.     As a proximate result of Defendants' failure to pay compensation at the applicable rate specified by Minn. Stat. § 177.24, Subd. 1(b)(1)(iv), Plaintiff and the Class members have suffered damages and are entitled to recover compensatory and liquidated damages, as well as a civil penalty for each violation, and an order directing Uber to immediately cease and desist from its unlawful conduct, plus costs, disbursements, attorneys' fees, interest as provided by law, and all other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION
**Violations of MFLSA (Minn. Stat. § 177.21 *et seq*.)**
**Failure to pay overtime wages – Minn. Stat. § 177.25**

65.     Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

66.     Pursuant to the MFLSA – specifically Minn. Stat. § 177.25, subd. 1 – "[n]o employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed."

67.     During the Class Period, Plaintiff and the Class members worked more than 48 hours per week and as such, are entitled to be paid overtime compensation at a rate not less than one and one-half times the regular rate of pay for all time worked in excess of 48 hours in any workweek.

68.     During the applicable Class period, Uber knowingly, intentionally, and willfully: (a) misclassified Plaintiff and the Class members as independent contractors; (b) failed to keep accurate time records of the work performed by Plaintiff and the Class members; and (c) withheld overtime pay properly due and owing to Plaintiff and the Class members.

69.     As a proximate result of Uber's failure to pay overtime compensation at the applicable rate specified in Minn. Stat. § 177.25, subd. 1, Plaintiff and the Class members have suffered damages and are entitled to recover compensatory and liquidated damages, as well as a civil penalty for each violation, and an order directing Uber to immediately cease and desist from its unlawful conduct, plus costs, disbursements, attorneys' fees, interest as provided by law, and all other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Violations of MFLSA (Minn. Stat. § 177.21 *et seq*.)**
**Diversion of Gratuities – Minn. Stat. § 177.24, subd. 3**

70.     Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

71.     Pursuant to Minn. Stat. § 177.24, subd. 3 "any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property of the employee," and "[n]o employer may require an employee to contribute or share a gratuity received by the employee with the employer…"

72.     As set forth in the preceding paragraphs, Uber represents to its drivers, including Plaintiff and the Class members, and to the public at large that gratuities are

included in the cost of the fare. However, Uber does not remit such gratuities to its drivers. Instead, Uber retains any gratuities for itself in violation of Minn. Stat. § 177.24, subd. 3.

73.     As a proximate result of Defendants' violations of Minn. Stat. § 177.24, subd. 3, Plaintiff and the Class members have suffered damages and are entitled to recover compensatory and liquidated damages, as well as a civil penalty for each violation, and an order directing Uber to immediately cease and desist from its unlawful conduct, plus costs, disbursements, attorneys' fees, interest as provided by law, and all other relief the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**Violations of MFLSA (Minn. Stat. § 177.21 *et seq.*)**
**Failure to Keep Records – Minn. Stat. § 177.30**

74.     Plaintiff repeats, realleges and incorporates the preceding paragraphs as if fully set forth herein.

75.     Pursuant to the MFSA – specifically Minn. Stat. § 177.30(a) – each employer "must make and keep a record of: (1) the name, address, and occupation of each employee; (2) the rate of pay, and the amount paid each pay period to each employee; [and] (3) the hours worked each day and each workweek by the employee."

76.     As set forth in the preceding paragraphs, during the applicable Class Period, Uber knowingly, intentionally, and willfully misclassified Plaintiff and the Class members as independent contractors and failed to keep accurate time records of the work performed by Plaintiff and the Class members, thereby violating Minn. Stat. § 177.30.

77.     As a proximate result of Uber's failure to keep records as required by Minn. Stat. § 177.30, Plaintiff and the Class members have suffered damages and are entitled to

recover compensatory and liquidated damages, as well as a civil penalty for each violation, and an order directing Uber to immediately cease and desist from its unlawful conduct, plus costs, disbursements, attorneys' fees, interest as provided by law, and all other relief the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**Violation of Minnesota Uniform Deceptive Trade Practices Act**
**(Minn. Stat. § 325D.44)**

78.     Plaintiff repeats, realleges and incorporates the preceding paragraphs as if fully set forth herein.

79.     Pursuant to the Minnesota Uniform Deceptive Trade Practices Act, a business engages in a "deceptive trade practice when, in the course of business, vocation or occupation," it engages in any conduct that "creates a likelihood of confusion or misunderstanding." Minn. Stat. § 325D.44, subd. 1(13).

80.     As set forth in the preceding paragraphs, in an effort to avoid providing Uber Drivers, including Plaintiff and the Class members, the benefits and protections they are entitled to under Minnesota law, Uber has knowingly, intentionally and willfully misclassified Uber Drivers as independent contractors despite the fact that the relationship between Uber and its drivers is actually one of employer/employee.

81.     Uber's conduct in misclassifying its drivers, including Plaintiff and the Class members, constitutes a deceptive trade practice, and thus constitutes a violation of the Minnesota Uniform Deceptive Trade Practices Act.

82.     As a proximate result of Uber's violation of the Minnesota Uniform Deceptive Trade Practices Act, Plaintiff and the Class members have suffered damages in

that Uber has obtained valuable property, money and or services from them, and has deprived them of rights and benefits guaranteed by law. Accordingly, Plaintiff and the Class members are entitled to injunctive relief restraining Uber from engaging in such deceptive trade practices in the future, and to recover the costs and attorney's fees they have incurred in obtaining such injunctive relief.

## SEVENTH CAUSE OF ACTION
**Tortious Interference with Prospective Economic Advantage**

83.    Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

84.    During the applicable Class period, Uber interfered with the business relationship between Uber Drivers, including Plaintiff and the Class members, and their riders. Specifically, said riders would have paid tips or gratuities to Uber Drivers absent Uber's interference.

85.    Plaintiff and the Class members had a reasonable expectation of economic advantage; i.e., the receipt of tips or gratuities, by virtue of the relationship with their riders. Indeed, it is customary in the car-service industry for passengers to tip their drivers at the end of a ride.

86.    With knowledge of the Uber Drivers' expectation of the above-described economic advantage, Uber tortiously interfered with, and prevented Plaintiff and the Class members from realizing, said economic advantage by misrepresenting that gratuities were included in the cost of the fares. In the absence of Uber's wrongful conduct, it is probable that the passengers who rode with Plaintiff and the Class members would have tipped them,

and that Plaintiff and the Class members would thus have realized the foregoing economic advantage or benefit.

87.     As a proximate result of Defendants' tortious interference, Plaintiff and the Class members were wrongfully prevented from realizing an economic advantage or benefit, and thereby suffered damages as previously described herein.

## EIGHTH CAUSE OF ACTION
### Conversion

88.     Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

89.     Plaintiff and the Class members hold a property interest in the gratuities that Uber collects, but does not remit to Uber Drivers.

90.     Uber has deprived Plaintiff and the Class members of their foregoing property interest by wrongfully refusing or failing to remit said gratuities to them. Instead, Uber retained that property for its own benefit without Plaintiff's permission.

91.     As a proximate result of Uber's unlawful conduct, Plaintiff and the Class members suffered damages and are entitled to recover the tips or gratuities retained by Uber, along with interest from the date of Uber's conversion, and all other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION
### Fraudulent/Intentional Misrepresentation

92.     Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

93.     As set forth in the preceding paragraphs, Uber, in the course of its business and/or during a transaction in which it had a financial interest, represented to Plaintiff and the Class members that "it is easy to earn $2,000 a week driving for uber."

94.     Uber further represented to Plaintiff and the Class members that they would, or concealed from them the fact that they would not, receive gratuities while working as Uber drivers.

95.     Uber's foregoing representations were false, and its omissions were misleading, as Plaintiff and the Class members did not earn $2,000 per week and did not receive such gratuities.

96.     Either Uber knew that the foregoing representations were false or misleading at the time they were made, or Uber issued said representations without knowing whether they were true or false.

97.     Uber made the foregoing representations and omissions relative to weekly earnings and gratuities with the intent of inducing Plaintiff and the Class members to drive, or continue to drive, for Uber, and those representations and omissions were material in that Plaintiff and the Class members acted in reliance thereon in making their decision to drive, or to continue to drive, for Uber.

98.     As a proximate result of Uber's misrepresentations and omissions, Plaintiff and the Class members suffered damages, and they are entitled to recover as previously set forth herein.

## TENTH CAUSE OF ACTION
### Promissory Estoppel

99.     Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

100.    Uber promised to remit gratuities to Plaintiff and the Class members.

101.    Uber made the foregoing promise with the reasonable expectation that it would induce definite and substantial action by Plaintiff and the Class members; specifically, that it would induce Plaintiff and the Class members to drive, or continue to drive, for Uber.

102.    In reliance on Uber's promise, Plaintiff and the Class members did decide to drive, or continue to drive, for Uber.

103.    As set forth in the preceding paragraphs, Uber did not keep its promise, thereby causing Plaintiff and the Class members to suffer damages and resulting in injustice, which can only be remedied or avoided by enforcing Uber's promise to remit all gratuities to Plaintiff and the Class members.

## ELEVENTH CAUSE OF ACTION
### Declaratory Relief

104.    Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if fully set forth herein.

105.    An actual controversy has arisen between Plaintiff and the Class members on the one hand, and Uber on the other, relating to whether Uber has unlawfully misclassified Plaintiff and the Class members as independent contractors, and thus has denied them the rights and benefits of employment status.

106.    Plaintiff and the Class members seek entry of a declaratory judgment in their favor which declares Uber's practices as heretofore alleged to be unlawful, and which provides for the recovery of all sums determined by this Court to be owed by Uber to Plaintiff and the Class members.

## TWELFTH CAUSE OF ACTION
### Request for Injunctive Relief

107.    Plaintiff repeats, realleges, and incorporates all preceding paragraphs as if set forth herein.

108.    Uber will continue to misclassify Plaintiff and the Class members as independent contractors and will continue to unlawfully deny them the common benefits of employment status if not enjoined.

109.    Plaintiff and the Class members have been injured and damaged as set forth in the preceding paragraphs, and are threatened with further injury and damages by Uber's continued misclassification and unlawful refusal to pay all compensation and benefits as heretofore alleged.

110.    Plaintiff and the Class members have no adequate remedy at law.

111.    Uber has acted on grounds generally applicable to the individual members of the Class, thereby making appropriate preliminary and permanent injunctive relief enjoining Uber and its agents from utilizing the unlawful practices heretofore alleged.

**WHEREFORE,** Plaintiff, individually and behalf of all others similarly situated, prays for relief and judgment against Defendants, and each of them jointly and severally, as follows:

A.    an Order enjoining Defendants from continuing the unlawful practices described herein;

B.    awarding declaratory relief that Plaintiff and the Class members are employees pursuant to applicable law;

C.    awarding compensatory damages according to proof;

D.    awarding liquidated damages pursuant to the MFLSA;

E.    awarding reasonable attorneys' fees and costs of suit;

F.    awarding pre and post judgment interest as provided by law; and

G.    awarding such other and further relief that the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury on all claims so triable.

DATE: September 29, 2017                 Respectfully submitted,

                                         **HALUNEN LAW**

                                         By: */s/ Melissa S. Weiner*
                                         Melissa S. Weiner
                                         *weiner@halunenlaw.com*
                                         Christopher J. Moreland
                                         *moreland@halunenlaw.com*
                                         1650 IDS Center
                                         80 South Eighth Street
                                         Minneapolis, Minnesota 55402
                                         Telephone: (612) 605-4098
                                         Facsimile: (612) 605-4099

                                         *Counsel for Plaintiff*
                                         *and the Proposed Class*